UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE DENISE KEINON,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 16-11888
Honorable Laurie J. Michelson
Magistrate Judge Patricia T. Morris

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION [14], GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [13], AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [10]**

Plaintiff Michelle Denise Keinon suffers from tendonitis, arthritis, degenerative disc and joint disease, facet arthropathy, a lateral disc protrusion impinging on a spinal nerve, hypertension, anxiety, depression, and pain. She sought disability insurance benefits and supplemental security income under the Social Security Act. In November 2009, an administrative law judge acting on behalf of Defendant Commissioner of Social Security rejected her claim. Keinon filed another application for benefits in May 2013. In March 2015, an ALJ again concluded that she was not disabled within the meaning of the Social Security Act. Keinon then appealed here. The Court referred her motion for summary judgment (R. 10) and the Commissioner's motion for summary judgment (R. 13) to Magistrate Judge Patricia T. Morris, who recommends affirming the ALJ's disability determination (R. 14). Keinon objects. (R. 15.)

Having performed a *de novo* review of those portions of the magistrate judge's report and recommendation to which Keinon has objected, *see* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3);

*Thomas v. Arn*, 474 U.S. 140, 150 (1985), the Court will adopt the recommendation of the magistrate judge for the reasons explained below.

**I.**

Keinon first argues that the magistrate judge failed to recognize the ALJ's error in weighing certain medical evidence from a treating source, Dr. Yari Campbell, and two consulting sources, Dr. Florence Thomas and Dr. Dinesh Tana.

**A.**

To start, the Court agrees with the magistrate judge that the ALJ did not err by assigning "limited weight" to two treating source statements from Dr. Campbell, who had treated Keinon since January 2011. The Commissioner must always give "good reasons" for the weight given to a treating source's medical opinion, 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2), and the magistrate judge properly found that the ALJ did so here (*see* R. 14, PID 976).

The ALJ summarized Dr. Campbell's treating source statements at length. (R. 8-2, PID 82.) One statement was a March 2014 Multiple Impairment Questionnaire in which Dr. Campbell indicated diagnoses of a herniated lumbar disc, hypertension, ulcerative colitis, and anxiety. (R. 8-8, PID 760.) He noted that Keinon experienced lower lumbar tenderness, decreased flexion, and pain (including sharp and constant pain in her lower spine with occasional radiation to her legs), and that an MRI revealed lumbar spondylosis and a herniated disc. (R. 8-8, PID 760–62.) Dr. Campbell indicated that excessive standing, bending, lifting more than 20 pounds, or squatting would trigger the pain. (R. 8-8, PID 762.) Checked boxes or circled options on the questionnaire form reflected much of Dr. Campbell's remaining findings. For instance, Dr. Campbell indicated that Keinon could sit only one to two hours and stand or walk zero to one hours in an eight-hour workday, that she needed to move around every 30-45 minutes, and that

she would need unscheduled breaks of 30-45 minutes three to four times each workday. (R. 8-8, PID 762, 765.) He noted that Keinon's anxiety and depression would increase her pain symptoms and that she was incapable of tolerating even "low stress" work because of panic attacks. (R. 8-8, PID 765.) Finally, Dr. Campbell indicated that she needed to avoid pushing, pulling, kneeling, bending, stooping, and that her pain and other symptoms would constantly affect her ability to concentrate. (*Id.*, PID 765–66.)

The second statement from Dr. Campbell was a December 2014 prescription form, where Dr. Campbell noted that Keinon had a herniated disc, that she could not lift more than 10 pounds or stand more than 30 minutes, that her prognosis was "fair," that her condition would last more than 12 months, but that she "cannot work." (R. 8-8, PID 768.)

The ALJ assigned Dr. Campbell's opinions "little weight," for several reasons. (R. 8-2, PID 83.) For one, the ALJ noted that the conclusion that a claimant is unable to work is reserved to the Commissioner. (*Id.*) Additionally, the ALJ observed that Dr. Campbell's statements "are overly restrictive and assume[] facts not in evidence." (*Id.*) The ALJ further noted, "The doctor estimates the claimant's degree of pain and fatigue, but the undersigned finds that such an assessment is not a medical opinion and is both conclusory and speculative in nature." (*Id.*) Finally, the ALJ noted that despite Dr. Campbell's treating relationship with Keinon, "his opinions are internally inconsistent and are not well supported by his own treatment notes or by the record as a whole." (*Id.*)

The magistrate judge saw no error, and the Court agrees. Some of Dr. Campbell's suggested limitations stem from purported psychological symptoms—for example, his conclusion that Keinon cannot even tolerate a "low stress" work environment. (*See* R. 8-8, PID 765.) But as the magistrate judge noted, contrary to Dr. Campbell's observations about Keinon's

3

psychological symptoms, Keinon herself "repeatedly" denied symptoms from depression and anxiety to Dr. Campbell and others. (R. 14, PID 976.) For instance, December 2013 records from Dr. Campbell reflect that Keinon had "[n]o psychological symptoms." (R. 8-8, PID 740.) Similarly, records from March 2012 and September 2013 reflect that Keinon denied anxiety and depression. (R. 8-8, PID 759, 783.) Moreover, in a December 2014 examination—the same month Dr. Campbell opined that Keinon was unable to work—Keinon denied both psychological and musculoskeletal symptoms. (R. 8-8, PID 746.) The magistrate judge also properly noted that Keinon "regularly denied other symptoms—such as neurological weakness, fatigue, sleeping problems, and difficulty with memory or concentration—upon which her claim rests." (R. 14, PID 976.) Indeed, she did. Records from March 2012, September 2013, and October 2013 all reflect that she denied those symptoms. (R. 8–8, PID 735, 738, 783.)

Keinon suggests that the ALJ should not have discounted Dr. Campbell's opinion because Dr. Campbell "specifically stated that the physical limitations he identified . . . were based on evidence of lower lumbar tenderness and severe pain, as well as an MRI of the lumbar spine showing spondylosis and a herniated disc." (R. 15, PID 986.) The ALJ acknowledged the relevant MRI, noting that it "revealed degenerative disc disease and facet arthropathy at the L3-L4 level, with a broad left lateral disc protrusion impinging the exiting left L3 spinal nerve." R. 8-2, PID 80.) But at another point in the ALJ's analysis, he concluded that "the record contains insufficient evidence, tests, and treatment notes from Dr. Campbell and Dr. Rudraraju (at a pain management clinic) to justify any additional restrictions, other than those set forth in the above residual functional capacity." (R. 8-2, PID 79.) The ALJ explained, "Specifically, the record fails to direct a finding that the claimant is unable to stand and/or walk for two out of eight hours, or that she is unable to sit for six of eight hours, if additionally accommodated by the use of an

4

assistive device and a sit/stand option." (R. 8-2, PID 79.) The ALJ cited records from Dr. Campbell and Dr. Rudraraju supporting that conclusion. For instance, a September 2013 record from Dr. Rudraraju indicates that Keinon's pain was only "5/10" (compared to the nine-to-ten level Dr. Campbell indicated in his questionnaire), and that while the pain is "constant and has a sharp and shooting quality," it is "improved by medication and rest." (R. 8-8, PID 788.) In those same records the ALJ cited, in December 2014 (as noted earlier), Dr. Campbell reported that Keinon had "[n]o musculoskeletal symptoms," and that her pain was at 8/10—but without any medication. (R. 8-8, PID 792–3.) Keinon has pointed to nothing in Dr. Campbell's treatment records or otherwise supporting his suggested work-preclusive restrictions.

Keinon's objection mostly takes issue with the magistrate judge's characterization of Dr. Campbell's March 2013 questionnaire as a check-the-box form. (R. 15, PID 986.) While Dr. Campbell wrote brief explanations for Keinon's diagnoses and the clinical findings and test results supporting those diagnoses, most of his prescribed limitations indeed came in the form of checked boxes or circled answers, with little to no explanation. *See Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) ("[C]ases recognize that the administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence."). And as the ALJ was right to conclude, some of Dr. Campbell's responses were "internally inconsistent." (*See* R. 8-2, PID 83.) For instance, Dr. Campbell checked boxes indicating that Keinon could only "occasionally" lift up to 10 pounds (never more) and carry up to five pounds (never more). (R. 8-8, PID 763.) But in the very next entry, Dr. Campbell marked "no" as his answer to a question asking whether Keinon had any "significant limitations in doing repetitive reaching, handling, fingering or lifting." (R. 8-8, PID 763.)

Thus, the magistrate judge correctly concluded that the substantial evidence supported the ALJ's analysis of Dr. Campbell's treating source statements.

**B.**

The Court also agrees with the magistrate judge that the ALJ did not err by assigning "some weight" to two consulting sources, Dr. Thomas Florence Thomas and Dr. Dinesh Tana.

After examining Keinon on behalf of the State Agency in September 2013, Dr. Florence Thomas opined that Keinon "appears to be limited in her ability to bend, stoop and stand for prolonged periods" and that "she may also have some difficulties pushing, pulling and climbing stairs." (R. 8-8, PID 718.) The ALJ observed that the opinion "is somewhat vague and does not give specific work related limitations." (R. 8-2, PID 83.) But the ALJ gave the opinion "some weight," because it "is consistent with the objective medical evidence and with the above residual functional capacity." (R. 8-2, PID 83.)

Dr. Dinesh Tana, a non-examining State Agency consulting physician, also opined in September 2013 that, among other things, Keinon could sit six hours in an eight-hour workday, stand for a total of two hours, frequently lift or carry 10 pounds, occasionally lift or carry 20 pounds, and may occasionally balance, stoop, kneel, crouch, and crawl, with certain other limitations. (R. 8-3, PID 187–88.) The ALJ afforded Dr. Tana's opinion "some weight," but he concluded that further limitations were warranted, including use of a cane and a sit/stand option. (R. 8-2, PID 83.)

The focus of Keinon's summary-judgment motion as to these consulting sources was that the ALJ erred by assigning some weight to their opinions because, according to Keinon, Dr. Thomas did not have access to *any* of her medical records, and Dr. Tanna had access to only some (through May 2013). (R. 10-2, PID 911–13.) The magistrate judge rejected both

6

arguments. First, the magistrate judge noted that Keinon provided no evidence to support her claim that Dr. Thomas had no access to her records. (R. 14, PID 978.) As for the latter claim, the magistrate judge found no error because the ALJ considered at length the medical evidence that came into the record after Dr. Tana's September 2013 review. (*See* R. 14, PID 977.) Keinon objects that the ALJ "is not qualified to make a medical determination that extensive medical data would not change the opinions from the non-treating experts." (R. 15, PID 987.) Keinon's objection has no merit.

"In appropriate circumstances, opinions from State agency . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." Soc. Sec. Rul. 96-6P, 1996 WL 374180, at *3 (Jul. 2, 1996). One possible appropriate circumstance is when the consultant's opinion "is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *Id*. When an ALJ relies on a consulting source's opinion that was issued before the development of other medical evidence or opinions from treating sources, the Sixth Circuit "require[s] some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'" *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Fisk v. Astrue*, 253 Fed. App'x 580, 585 (6th Cir. 2007)); *see also Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016) ("*Blakley* . . . require[s] only that before an ALJ accords significant weight to the opinion of a non-examining source who has not reviewed the entire record, the ALJ must give 'some indication' that he 'at least considered' that the source did not review the entire record. . . . In other words, the record must give some indication that the ALJ subjected such an opinion to scrutiny.").

7

The ALJ's opinion here gives plenty of indication that he scrutinized Dr. Tana's opinion in light of the incomplete record at the time. The ALJ specifically stated that "additional evidence was submitted into evidence at the hearing level which the State Agency did not have access to and which supports . . . additional limitations" compared to the ones offered by Dr. Tana. (R. 8-2, PID 83–84.) And as the magistrate judge noted, the ALJ's opinion contained "extensive discussion" of, and citations to, treatment records following Dr. Tana's review, including those from Dr. Campbell and Dr. Sruthi Rudraraju, who treated Keinon at a pain clinic. (R. 14, PID 977–78.)

As for Dr. Thomas, Keinon's argument in her summary-judgment motion was that reversible error was present because Dr. Thomas was not provided any "medical records or diagnostic imaging." (R. 10-2, PID 911.) As noted, the magistrate judge found that charge unsupported because Keinon offered nothing more than a bald assertion in her brief. Moreover, Dr. Thomas's report included a page-long medical history, suggesting that she indeed had access to Keinon's medical records. (R. 8-8, PID 716.) In her objection, Keinon raises a new argument as to Dr. Thomas: she lumps Dr. Thomas in with Dr. Tana, apparently conceding that Dr. Thomas had access to some records at the time of her September 2013 report, but suggesting that the ALJ erred in assigning "some weight" to Dr. Thomas's opinion because the records were incomplete. (R. 15, PID 987.)

Even assuming Keinon's argument is properly preserved, the Court sees no error in the ALJ's assignment of some weight to Dr. Thomas's opinion. The ALJ noted that the consultative examination with Dr. Thomas was in September 2013, thus before some of Keinon's other treatment records. (R. 8-2, PID 80.) And as noted above, the ALJ discussed subsequent records in detail in formulating and adding appropriate limitations to the residual functional capacity.

8

Indeed, immediately after describing Dr. Thomas's September 2013 consultative examination, the ALJ proceeded to discuss October 2013 records from Dr. Rudraraju and December 2013 records from Dr. Campbell. (*See*, *e.g.*, R. 8-2, PID 80.) The chronology alone provides "'some indication that [the ALJ] at least considered that the source did not review the entire record." *Kepke*, 636 F. App'x at 632 (internal quotation marks and citation omitted).

Accordingly, the Court will overrule Keinon's first objection.

**II.**

Keinon's second objection centers on the ALJ's assessment of her credibility.

The ALJ discussed at length Keinon's reports concerning her symptoms and limitations from her pain. (R. 8-2, PID 78.) For instance, in a June 2013 function report, Keinon claimed that, among other things, she "cannot sit or stand for long periods of time," cannot get around without her cane, cannot drive because of numbness in her legs, cannot stand "with a cane or sit for periods of time," cannot "lift heavy objects," squat, or bend because of her pain, cannot "stand and walk" longer than 20 minutes, and cannot walk or sit more than 20 minutes without it becoming "impossible to move around." (R. 8-6, PID 390–97.)

The ALJ found that Keinon's impairments "could reasonably be expected to cause the alleged symptoms" and that Keinon's "statements concerning the intensity, persistence and limiting effects of these statements are generally credible." (R. 8-2, PID 79.) The ALJ further noted that "[t]he record [does] not contain any inconsistencies that would bring [Keinon's] credibility into question," and that many allegations "are corroborated in the third party function report provided by [Keinon's brother]." (*Id.*) Nonetheless, the ALJ found that the record was insufficient to justify restrictions beyond those indicated in the RFC. (*Id.*) Specifically, the ALJ found that the record did not support a finding that Keinon "is unable to stand and/or walk for

9

two out of eight hours, or that she is unable to sit for six of eight hours, if additionally accommodated by the use of an assistive device and a sit/stand option." (*Id*.) The ALJ further found that Keinon's use of medications—and the alleged side effects limited to drowsiness and dizziness—would not "significantly interfere with [her] ability to perform basic work activities." (*Id*.)

The magistrate judge correctly noted that the ALJ did not actually make an "adverse credibility determination." (R. 14, PID 979.) Instead, as the magistrate judge concluded, "That the ALJ incorporated a number of Keinon's subjective complaints into his RFC shows that he gave them due consideration, alongside other medical evidence, in crafting his analysis." (R. 14, PID 980.) Keinon's objection flags two issues. Neither warrants departure from the magistrate judge's conclusion.

Keinon first makes the same argument she did in her summary-judgment motion, suggesting that the ALJ improperly rejected her claims about her symptoms. It is true that the applicable regulations provide that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 C.F.R. § 404.1529(c)(2); *see also* 20 C.F.R. § 416.929(c)(2); SSR 96-7P, 1996 WL 374186, at *6 (Jul. 2, 1996) ("[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence[.]").[1] But the ALJ here did not reject or disregard Keinon's statements about the intensity or persistence of her pain. He instead deemed such statements "generally credible." (R. 8-2, PID 79.) Nor did he reject or disregard Keinon's stated

---

[1] Though effective at the time of the ALJ's decision here, this ruling was superseded by SSR 16-3P, 2016 WL 1119029 (Mar. 16, 2016).

effects of those symptoms on her daily activities or ability to work. Instead, the ALJ simply found that the daily activities Keinon described—albeit "rather limited"—were consistent with the RFC he crafted. (R. 8-2, PID 79.) Keinon does not point to any subjective complaint that the ALJ rejected or failed to account for in his analysis.

Keinon next critiques one of the ways in which the magistrate judge reached her conclusion that the ALJ did not err in weighing Keinon's credibility. Specifically, in describing the ALJ's reasons for squaring the RFC with Keinon's complaints, the magistrate judge noted that the ALJ observed that Keinon had failed to visit her pain clinic during a year in which she alleges her pain was disabling. (R. 14, PID 979.) A ruling effective at the time of the ALJ's decision prohibited ALJ's from "draw[ing] any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7P, 1996 WL 374186, at *7 (Jul. 2, 1996). While the magistrate judge noted Keinon's failure to appear at her pain clinic for over a year, nothing in the ALJ's decision suggests that he drew any adverse inference from that gap. Instead, after already having deemed Keinon "generally credible" and proceeding to discuss the medical evidence in chronological order, including Keinon's treatment at the pain clinic in March 2012, the ALJ simply noted that Keinon "did not return to the pain clinic until over a year later, in May 2013," before discussing the substance of the May 2013 pain clinic record. (R. 8-2, PID 80.) Again, Keinon points to nothing suggesting that the ALJ drew any inference from the one-year gap in pain management simply because the ALJ noted the gap when laying out the chronology of her treatment.

Thus, the Court will overrule Keinon's second objection.

**III.**

Keinon next objects that the magistrate judge failed to find error in the ALJ's hypothetical question to the vocational expert, which, consistent with the RFC, included a limitation to "simple, routine, and repetitive tasks."

By way of background, at step three, the ALJ determined that Keinon had moderate CPP difficulties. (R. 8-2, PID 76.) At Keinon's hearing, the ALJ posed several questions to the vocational expert. One concerned jobs that could be performed by a hypothetical individual with limitations reflecting Keinon's ultimate RFC, including the limitation to simple, routine, and repetitive tasks. (R. 8-2, PID 116.) The VE responded that such an individual could work as an "information clerk" or "order caller." (R. 8-2, PID 117.)

In her summary-judgment motion, Keinon argued that the ALJ's limitations of "simple, routine, and repetitive" tasks in the hypothetical to the VE did not account for the ALJ's finding that Keinon had moderate difficulties with concentration, persistence, and pace. (R. 10-2, PID 919.) Keinon relied on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). In that case, the ALJ had found that the claimant had moderate CPP limitations, in part by relying on a mental residual functional capacity ("MRFC") assessment that included specific limitations to pace, speed, and concentration, including that the claimant could only work "two-hour segments over an eight-hour day where speed was not critical." *Id*. The Court held that the ALJ's hypothetical to the VE—which included only a limitation to "simple, repetitive tasks and instructions in non-public work settings"—erroneously "omitted the[] speed- and pace-based restrictions completely," making remand appropriate. *Id*.

The magistrate judge found *Ealy* distinguishable from this case. The magistrate judge reasoned that the ALJ's hypothetical here "comport[ed] to his RFC finding and evaluation of the

12

evidence." (R. 14, PID 981.) Additionally, the magistrate judge pointed out that Keinon made no argument as to why the hypothetical's limitations to "simple, routine, repetitive tasks" were insufficient in this case. (*Id.*)

"In order to constitute substantial evidence that the claimant can perform work available in the national economy, the ALJ's questions to the vocational expert must 'accurately portray the claimant's individual physical and mental impairments.'" *Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 249 (6th Cir. 2016) (alterations omitted) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002)).

"Case law in this Circuit does not support a rule that a hypothetical providing for simple, unskilled work is per se insufficient to convey moderate limitations in concentration, persistence and pace." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) (holding that hypothetical with limitations to "simple, unskilled" work accounted for moderate CPP difficulties because the claimant "has not cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work"). Although some cases have suggested that an RFC limiting a claimant to "unskilled" or "simple, routine" work is not sufficient to account for "moderate" difficulties in CPP because the claimant may have difficulty staying on task or keeping pace even when performing unskilled or simple, routine work, other decisions have recognized that limiting a claimant to unskilled or simple, routine work is sufficient because at least some claimants with those limitations can stay on task and keep pace when the work is simple. *See White v. Comm'r of Soc. Sec.*, No. 12-12833, 2013 WL 4414727 (E.D. Mich. Aug.14, 2013) (discussing case law). When an ALJ adds a further RFC limitation to "repetitive" tasks, "Courts have repeatedly found that in the absence of medical evidence supporting specific limitations

13

such as those found in *Ealy* . . . , an RFC's limitation to simple repetitive tasks may very well be adequate to address a claimant's moderate impairment as to concentration, persistence, and pace." *Kardos v. Comm'r of Soc. Sec.*, No. 1:11-CV-964, 2013 WL 1869110, at *1 (W.D. Mich. May 3, 2013) (collecting cases).

Here, the Court finds no error in the ALJ's hypothetical limiting Keinon to "simple, routine, and repetitive tasks."

At step three of his analysis, the ALJ discussed the evidence relevant to Keinon's moderate CPP difficulties. The ALJ reasoned that Keinon claimed that "the pain and other symptoms interfere with her ability to sleep and to concentrate during the day, and she estimates that she can pay attention for no more than 25 minutes at a time." (R. 8-2, PID 76 (emphasis added).) Further, the ALJ pointed out that Keinon "reports needing reminders for medication." (*Id.*) But on the other hand, the ALJ noted that Keinon manages her finances independently, has no problem spending the "majority of her day" watching television, can prepare "quick, simple meals," and cares for her nine-year-old son. (*Id.*)

The ALJ revisited the CPP issue at two points in his RFC analysis. At one point, after reiterating the CPP finding of moderate difficulties while discussing Keinon's mental health history, the ALJ noted that at her psychological consultative examination, Keinon "initially stated that she was seeking disability benefits only for her physical impairments, and the examiner found her to be rather vague in her presentation during the mental status examination." (R. 8-2, PID 82.) Later, the ALJ discussed in detail the State Agency's finding that Keinon had mild to moderate CPP limitations. (R. 8-2, PID 84.) The ALJ noted that the State Agency opined that Keinon was "moderately limited in ability to understand, remember and carry out detailed instructions, to maintain attention and concentration for extended periods, and to perform

activities within a schedule, maintain regular attendance, to be punctual within customary tolerances, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, but retains the capacity to understand, remember, and carry out 1-2 step instructions." (R. 8-2, PID 84.) The ALJ noted that Keinon "allegedly needs reminders for medication, but not to go places, is able to handle money, and can pay attention for 25-minute increments," again referencing the issue. (*Id.*) Further, the ALJ described that at her psychological consultative examination, Keinon was "somewhat anxious but was also fully oriented and repeated four digits forward and three digits backwards." The ALJ also noted that Keinon "had difficulty performing the serial sevens task and could only remember one out of three items after a delay, but her capacity for calculations was intact." (*Id.*)

The ALJ then concluded that the State Agency's findings supported a moderate CPP limitation but that the limitation "is sufficiently accommodated by the restriction that she can perform only simple, routine, and repetitive tasks." (*Id.*)

The Court agrees with the magistrate judge's conclusion that the ALJ did not err. Keinon objects that the ALJ "rel[ied] on limitations in a hypothetical that are directly contrary to other findings made by the ALJ in the decision." (R. 15, PID 989.) But she offers no factual analysis, leaving the Court guessing as to which of the ALJ's findings were supposedly "directly contrary" to the limitations in the ALJ's hypothetical. In other words, Keinon has not "cited to any evidence in the record that provides for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing [simple, routine, and repetitive] work." *See Kepke*, 636 F. App'x at 635. And the Court is aware of no such evidence in the record. Notably, the State Agency MRFC findings on which the ALJ in part relied put forward even a less

15

restrictive view than the ALJ: restrictions to simple and routine tasks (without any restriction to "repetitive" tasks as well) would accommodate Keinon's CPP limitations. (*See* R. 8-3, PID 192; R. 8-3, PID 173.) Thus, the Court struggles to see any error in the ALJ's hypothetical to the VE.

So Keinon's final objection will be overruled.

## IV.

For the reasons stated, having reviewed the report and recommendation (R. 14) and Keinon's objections (R. 15), the Court will ADOPT the report, DENY Keinon's motion for summary judgment (R. 10), GRANT the Commissioner's motion for summary judgment (R. 13), and affirm the disability determination of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

SO ORDERED.

s/Laurie J. Michelson
LAURIE J. MICHELSON
Dated: August 2, 2017                    U.S. DISTRICT JUDGE


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 2, 2017.

s/Keisha Jackson
Case Manager